UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHM REGATTA POINTE, LLC

    Plaintiff,

v.                                        Case No. 8:21-cv-1854-KKM-AEP
                                               IN ADMIRALTY

M/Y *ALLEY CAT*, a 2007 Model 39-foot
Meridian Yachts Cruiser bearing Hull
Identification Number MDNH6008F607,
and U.S. Coast Official Number 1202587,
her engines, tackle, furniture, tender and
appurtenances, *in rem*, and RICHARD BRADLEY
BIERMAN a/k/a BRAD BIERMAN a/k/a
RICHARD B. BIERMAN, *in personam*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This cause comes before the Court upon Plaintiff's Motion for Final Default Judgment ("Motion") against the *in rem* Defendant, M/Y *Alley Cat*, a 2007 Model 39-foot Median Yackts Cruiser, Hull Identification number MDNH6008F607 and U.S. Coast Official Number 1202587 (the "Vessel"), and *in personam* Defendant, Richard Bradley Bierman a/k/a Brad Bierman a/k/a Richard B. Bierman (the "Owner") (collectively "Defendants") (Doc. 29). No response was filed in opposition and the time to do so has now passed. Therefore, Plaintiff's Motion is now ripe for disposition. For the reasons discussed below, it is recommended that the motion be granted.

**I.     Background**

Plaintiff is a company engaged in providing boat slips, dockage, and vessel storage. On June 18, 2020, the Owner entered into a Slip License Agreement (the "Slip Agreement") with Plaintiff that, among other things, governs the rate for docking the Vessel at Plaintiff's marina in Palmetto, Florida (Doc. 1-1). From March 2021 through August 18, 2021, however, the Vessel was docked at Plaintiff's marina without the Owner providing any payment to Plaintiff (Doc. 29-1).

On August 2, 2021, Plaintiff filed a Verified Complaint seeking to foreclose a maritime lien for necessaries on the Vessel pursuant to 46 U.S.C. § 31301, *et. seq,* (Count 1), and a breach of maritime contract and a maritime lien against the Owner (Court 2) (Doc. 1). Plaintiff moved for issuance of a warrant of arrest *in rem* under Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and a writ of maritime attachment and garnishment (Docs. 13 & 14). On August 9, 2021, the Court issued an Order directing the issuance of a warrant of arrest related to the Vessel (Doc. 15) and on August 11, 2021, the Court issued an Order appointing Plaintiff as substitute custodian (Doc. 19). The Clerk of the Court then issued the Warrant of Arrest for the Vessel (Doc. 17). On August 19, 2021, the U.S. Marshals Service arrested the Vessel and placed Plaintiff in exclusive possession of the Vessel as its ordered substitute custodian (Doc. 22).

On September 3, 2021, the Notice of Action *in rem* was published as required by the Supplemental Admiralty Rules and Section 3(c) and (g) of the Admiralty and Maritime Practice Manual of the Middle District of Florida (Doc. 23-1).

Additionally, Plaintiff made four attempts to serve the Owner (Doc. 24). Moreover, Plaintiff's counsel sent the Owner a letter with the Verified Complaint, Summons, and Warrant of Arrest via email and certified mail to the address and email provided by the Owner in the Slip Agreement (Doc. 25-1). The Owner failed to respond to the Complaint and the Clerk entered default against the Vessel and the Owner on October 27, 2021 (Docs. 27 & 28).

Plaintiff now moves the court to (1) enter a default judgment against Defendants; (2) award Plaintiff damages in the amount of $4,648.08, *custodia legis* expenses in the amount of $10,772.76, plus pre-judgment interest at the rate provided by 28 U.S.C. § 1961; (3) order that the United States Marshal sell the Vessel; (5) declare that Plaintiff may credit bid up to the amount of the judgment entered; and (6) provide for Plaintiff to recover additional amounts as administrative priority payments for *custodia legis* services and expenses provided after November 4, 2021[1] to the date when the Court confirms the sale of the Vessel.

## II.    Discussion

A court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2). A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for entry of

---

[1] Plaintiff calculated its *custodia legis* expenses from the date of the Vessel's arrest on August 19, 2021, to the date when it filed its Motion for Default Judgment on November 4, 2021, for a total amount of $10,772.76. Plaintiff also seeks to recover the *custodia legis* expenses incurred from November 5, 2021, to the date when the Court confirms the sale of the Vessel.

a default judgment. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). In defaulting, a defendant "admit[s] the plaintiff's well-pleaded allegations of fact" for purposes of liability. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). A court must review the sufficiency of the complaint before determining whether a moving party is entitled to default judgment pursuant to Rule 55(b). *See United States v. Kahn*, 164 F. App'x 855, 858 (11th Cir. 2006) (citing *Nishimatsu Constr. Co.*, 515 F.2d at 1206). "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to provide the grounds of its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

Pursuant to the Federal Maritime Lien Act, "a person providing necessaries to a vessel" may assert a lien against the vessel and sue *in rem* to enforce the lien. 46 U.S.C. § 31342(a). The term "necessaries" is given a broad meaning. *See Bradford Marine, Inc. v. M/V Sea Falcon,* 64 F.3d 585, 589 (11th Cir. 1995) (noting that the term "necessaries" has been liberally construed to include "what is reasonably needed in the ship's business") (citing *J. Ray McDermott & Co. v. Off–Shore Menhaden Co.*, 262 F.2d 523, 525 (5th Cir. 1959)). By statute, necessaries include "repairs,

supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4).

In its Verified Complaint, Plaintiff alleged that on or about June 18, 2020 the Vessel was brought to Plaintiff's marine facility (Doc. 1, ¶ 9) and the Owner signed the Slip Agreement in his capacity as "owner" (Doc. 1, ¶ 6; and Doc. 1-1). According to Plaintiff, it has provided services, including dockage/storage, at an agreed upon rate pursuant to the Slip Agreement (Doc. 1, ¶ 11). Plaintiff alleged that it was owed $3,098.72 for necessaries it provided to the Vessel (Doc. 1, ¶ 12; Doc. 1-2) and the Vessel and its Owner failed to pay the overdue charges for the balance due for these necessaries (Doc. 1, ¶ 13). The Verified Complaint included an exhibit, detailing the unpaid dockage and electricity fee for March 2021 through June 2021, for a total amount of $3,098.72 (Doc. 1-2). Plaintiff alleged it was entitled to recover from the Vessel the $3,098.72 and additional dockage incurred prior to the arrest, along with pre-judgment interest, the *custodia legis* expenses for the vessel while it is under arrest, and the U.S. Marshal's fees and court filing fee (Doc. 1, ¶ 14).

Plaintiff has also submitted a declaration from Jeffrey A. Durning, general manager for Plaintiff, in support of its Motion (Doc. 29-1). Durning states that Plaintiff is owed $4,648.08 for dockage, electricity and state sales tax for services provided to the Vessel from March 1, 2021, through August 18, 2021 (Doc. 29-1). Additionally, Durning states that Plaintiff is owed $10,772.76 for dockage, electricity, and custodial fees, including state sales tax, for *custodia legis* services

provided to the Vessel from August 19, 2021, through November 4, 2021 (Doc. 29-1). Moreover, according to Durning, Plaintiff paid $1,500.00 to the U.S. Marshals Service for expenses and insurance premiums for the Vessel's arrest and attachment (Doc. 29-1). Finally, Plaintiff paid $400.00 to the Clerk of Court for the filing fee in the instant case (Doc. 29-1).

In addition to entry of default judgment, Plaintiff seeks declaration that its judgment be entitled to an administrative priority payment for the services provided as substitute custodian. It is well recognized that "claims for necessaries provided to a ship after its arrest 'are paid as expenses of justice in priority to all lien claims when the dictates of equity and good conscience so require.'" *Dresdner Bank AG v. M/V Olympia Voyager,* 465 F.3d 1267, 1272–73 (11th Cir. 2006) (quoting *Donald D. Forsht Assocs., Inc. v. Transamerica ICS, Inc.,* 821 F.2d 1556, 1561 (11th Cir. 1987)). As a result, a judgement for *custodia legis* expenses shall be entitled to priority payment.

Based upon the well-pleaded factual allegations contained in the Verified Complaint and evidence of damages established in Durning's declaration, the undersigned finds that Plaintiff is entitled to a default judgment in the amount of $15,420.84 plus pre-judgment interest and *custodia legis* expenses incurred after November 4, 2021, through the date when the Court confirms the sale of the Vessel. The U.S. Marshal should be directed to conduct a sale of the Vessel in accordance with Supplemental Admiralty Rule E(9) and the Local Admiralty and Maritime Practice Manual 5(r). Further, Plaintiff should be permitted to credit bid its

judgment at the sale. Moreover, Plaintiff has indicated that it will file a motion on entitlement to attorney's fees after judgment is entered. The undersigned notes that it would be appropriate for Plaintiff to include its request for costs at that time as well.

Accordingly, it is hereby

RECOMMENDED:

1. Plaintiff's Motion for Final Default Judgement Against Defendants (Doc. 29) be GRANTED.

2. Default judgement be entered against Defendants awarding Plaintiff damages in the amount of $4,648.08, *custodia legis* expenses in the amount of $10,772.76, plus pre-judgment interest and *custodia legis* expenses for the Vessel from November 5, 2021, through the date when the Court confirms the sale of the Vessel.

3. The U.S. Marshal be directed to conduct the sale of the Vessel, her engines, tackle, apparel, furniture, equipment, appurtenances, and all other necessaries thereunto appertaining and belonging to the Vessel, in accordance with Rule E(9) of the Supplemental Admiralty Rules and the Local Admiralty and Maritime Practice Manual 5(r).

4. Plaintiff be granted permission to credit bid its judgment at the public sale of the Vessel.

IT IS REPORTED in Tampa, Florida, on this 29th day of April, 2022.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**


cc:   Hon. Kathryn Kimball Mizelle
      Counsel of Record