UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHM REGATTA POINTE, LLC

      Plaintiff,

v.                                                        Case No. 8:21-cv-1854-KKM-AEP
                                                                IN ADMIRALTY

M/Y *ALLEY CAT*, a 2007 Model 39-foot
Meridian Yachts Cruiser bearing Hull
Identification Number MDNH6008F607,
and U.S. Coast Official Number 1202587,
her engines, tackle, furniture, tender and
appurtenances, *in rem*, and RICHARD
BRADLEY BIERMAN a/k/a
BRAD BIERMAN a/k/a RICHARD B.
BIERMAN, *in personam*,

      Defendants.
_____/

**REPORT AND RECOMMENDATION**

This cause comes before the Court upon Plaintiff's Motion to Disburse Funds from the Court Registry to Satisfy the Default Judgement ("Motion") (Doc. 39) and Plaintiff's Supplemental Motion for Attorney's Fees (Doc. 42). No response was filed in opposition to either motion and the time to do so has now passed. Therefore, Plaintiff's Motions are ripe for disposition. For the reasons discussed below, it is recommended that the motions be granted.

## I. Background

Plaintiff, SHM Regatta Pointe, LLC, is a company engaged in providing boat slips, dockage, and vessel storage and filed this matter against the *in rem* Defendant, M/Y *Alley Cat* , a 2007 Model 39-foot Median Yackts Cruiser, Hull Identification number MDNH6008F607 and U.S. Coast Official Number 1202587 (the "Vessel"), and *in personam* Defendant, Richard Bradley Bierman a/k/a Brad Bierman a/k/a Richard B. Bierman (the "Owner") (collectively "Defendants"). On June 18, 2020, the Owner entered into a Slip License Agreement (the "Slip Agreement") with Plaintiff that, among other things, governs the rate for docking the Vessel at Plaintiff's marina in Palmetto, Florida (Doc. 1-1). From March 2021 through August 18, 2021, however, the Vessel was docked at Plaintiff's marina without the Owner providing any payment to Plaintiff (Doc. 29-1).

On August 2, 2021, Plaintiff filed a Verified Complaint seeking to foreclose a maritime lien for necessaries on the Vessel pursuant to 46 U.S.C. § 31301, *et. seq,* (Count 1), and a breach of maritime contract and a maritime lien against the Owner (Court 2) (Doc. 1). Plaintiff moved for issuance of a warrant of arrest *in rem* under Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and a writ of maritime attachment and garnishment (Docs. 13 & 14). On August 9, 2021, the undersigned issued an Order directing the issuance of a warrant of arrest related to the Vessel (Doc. 15) and on August 11, 2021, the undersigned issued an Order appointing Plaintiff as substitute custodian (Doc. 19). The Clerk of the Court then issued the Warrant of Arrest for the Vessel (Doc. 17).

On August 19, 2021, the U.S. Marshals Service arrested the Vessel and placed Plaintiff in exclusive possession of the Vessel as its ordered substitute custodian (Doc. 22).

On September 3, 2021, the Notice of Action *in rem* was published as required by the Supplemental Admiralty Rules and Section 3(c) and (g) of the Admiralty and Maritime Practice Manual of the Middle District of Florida (Doc. 23-1). Additionally, Plaintiff made four attempts to serve the Owner (Doc. 24). Moreover, Plaintiff's counsel sent the Owner a letter with the Verified Complaint, Summons, and Warrant of Arrest via email and certified mail to the address and email provided by the Owner in the Slip Agreement (Doc. 25-1). The Owner failed to respond to the Complaint and the Clerk entered default against the Vessel and the Owner on October 27, 2021 (Docs. 27 & 28).

Plaintiff then moved for final default judgment (Doc. 29). The motion was referred to the undersigned, who then issued a Report and Recommendation recommending that default judgement be entered against Defendants (Doc. 30). The District Judge adopted the Report and Recommendation and directed the Clerk to enter default judgment against Defendants in the amount of $4,648.08, *custodia legis* expenses in the amount of $10,772.76, plus pre-judgment interest and *custodia legis* expenses for the Vessel from November 5, 2021 through the date when the Court confirms the sale of the Vessel (Doc. 31, at 2). The undersigned also directed the U.S. Marshal to conduct the sale of the Vessel in accordance with Rule E(9) of the Supplemental Admiralty Rules and the Local Admiralty and Maritime Practice

Manual 5(r) (Doc. 31, at 2). The U.S. Marshal conducted the public sale of the Vessel on June 23, 2022 and the Vessel was sold to the highest bidder for $115,000 (Doc. 33). The Clerk issued the Confirmation of Sale on July 21, 2022 (Doc. 37).[1] The undersigned then directed the Clerk to accept the amount tendered for the sale of the Vessel and place it in an interest-bearing account in the Court's registry (Doc. 40). Plaintiff then moved for entitlement of attorney's fees (Doc. 38), which the undersigned granted (Doc. 42).

Plaintiff now moves for an award of $16,835.00 for attorney's fees and for the disbursement of funds from the sale proceeds of the Vessel in the Court's registry in the amount of $56,265.46 (default judgment) and $16,838.00 (attorney's fees) (Docs. 39 & 43).

## II.  Discussion

### A.  Attorney's Fees Amount

To calculate a reasonable award of attorney's fees, courts multiply the reasonable hourly rate by the reasonable hours expended.[2] *See Hensley v. Eckerhart*,

---

[1] The confirmation of sale was delayed because the buyer had to secure financing to close on the purchase (*see* Doc. 39-1).

[2] When calculating the reasonably hourly rate and the number of compensable hours that are reasonable, courts in the Eleventh Circuit are guided by the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (noting that the *Johnson* factors may still "be considered in terms of their influence on the lodestar amount"). The twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), may also be relevant considerations for determining the lodestar amount: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the

461 U.S. 424, 433 (1983); *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The lodestar is calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.[3] *Norman*, 836 F.2d at 1299 (citation omitted). In determining this lodestar figure, a "reasonable hourly rate" consists of "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* (citations omitted). In this context, "market rate" means the hourly rate charged in the local legal market by an attorney with expertise in the area of law who is willing and able to take the case, if indeed such an attorney exists. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1999). The fee applicant bears the burden of establishing the requested rates are in line with the prevailing market rates by producing direct evidence of rates charged in similar circumstances or opinion evidence of reasonable rates. *See Norman*, 836 F.2d at 1299. At a minimum, satisfactory evidence consists of more than the affidavit of the attorney performing the work; instead, "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits." *Id.*

After determining the reasonable hourly rate, courts must then determine the number of hours reasonably expended on the litigation. In submitting a fee petition,

---

undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. However, these "factors are largely redundant to the lodestar analysis because they are almost always subsumed in the lodestar." *In re Home Depot Inc.*, 931 F.3d 1065, 1091 (11th Cir. 2019).

counsel must exercise proper billing judgment and thus exclude any hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *Norman,* 836 F.2d at 1301. Accordingly, counsel may not bill any hours to their adversary which they would not bill to their client. *Hensley*, 461 U.S. at 434. Where the time or fees claimed appear expanded or lack documentation or testimonial support, a court may make a fee award based on its own experience and knowledge. *Norman,* 836 F.2d at 1303 (citation omitted).

### i. Reasonable Hourly Rates

In the instant case, Plaintiff's counsel seek an hourly rate of $350.00 for both attorneys James W. Stroup and Farris J. Martin III. According to his affidavit, Mr. Stroup has been practicing law for over 32 years and is board certified in Admiralty and Maritime Law by the Florida Bar since 1996 (Doc. 44). Mr. Martin has been practicing law for over 31 years (Doc. 45). Moreover, Plaintiff presents the declaration of Theresa Bennett, an attorney who has been board certified in Admiralty and Maritime Law by the Florida Bar since 2011 and currently a member of the Florida Admiralty Law Committee (Doc. 46). According to Ms. Bennett, Mr. Stroup and Mr. Martin's rate is within the hourly rates charged by other attorneys in Florida with the same amount of experience (Doc. 46, at 6). Given the support in the record and the undersigned's independent assessment, the foregoing hourly rate is reasonable and should be awarded.

### ii. Reasonable Hours Expended

In the instant case, Plaintiff asserts that 48.1 hours were reasonably and necessarily expended by the attorneys. Specifically, Mr. Stroup expended 13.7 hours and Mr. Martin expended 34.4 hours (Docs. 44 & 45). Upon review of the billing records, none of the billing entries appear excessive, redundant, or otherwise unnecessary (*see* Doc. 44-1). Based on the foregoing, the lodestar for Mr. Stroup's fees is the reasonable hourly rate of $350 multiplied by 13.7 hours reasonably expended, totaling $4,795.00. The lodestar for Mr. Martin's fees is the reasonable hourly rate of $350 multiplied by 34.4 hours reasonably expended, totaling $12,040.00. As such, the total lodestar amount is $16,835.00.

### B. Disbursement of Funds

Plaintiff seeks the disbursement of funds from the sale proceeds of the Vessel for a total of $56,265.46 to satisfy the default judgment and $16,835.00 to satisfy Plaintiff's reasonable attorney's fees award. Plaintiff has submitted a declaration from Jeffrey A. Durning, general manager for Plaintiff, in support of its Motion (Doc. 39-2). The requested amount of $56,265.46 consists of the following totals: $4,648.08 is the default amount for damages for dockage, electricity, and state sales tax for services provided to the Vessel from March 1, 2021 to August 18, 2021 (*see* Doc. 30, at 5); $10,772.76 is the default amount for *custodia legis* expenses of the Vessel incurred from August 19, 2021 to November 4, 2021 (*see* Doc. 30, at 5-6); $35,708.71 for the entitled *custodia legis* expenses of the Vessel from November 5, 2021 to July 21, 2022 (the date of the Confirmation of Sale) (*see* Doc. 39-2, at 3);

$4,668.28 for the U.S. Marshal's fees (Doc. 39-2, at 3); $402 for the court filing fee (Doc. 39-2, at 4); and $65.63 for the cost of publishing the Notice of Action In Rem (Doc. 39-2, at 4).

Generally, plaintiffs can be awarded costs following a final default judgment of foreclosure, *in rem*, against a ship. *Provident Bank v. M/Y Relax*, No. 3:15-cv-127-MCR-EMT, 2015 WL 12711655, at *2 (N.D. Fla. June 3, 2015). Further, 28 U.S.C. § 1920(1) authorizes a Plaintiff to recover "[f]ees of the clerk and marshal." The filing fee of $402.00, and the U.S. Marshal's fees of $4,668.28 to arrest and sell the Vessel, and publication fees are all taxable pursuant to 28 U.S.C. § 1920(1) and 28 U.S.C. § 1921(a)(1). Specifically, § 1921(a)(1) provides the following:

> The United States marshals or deputy marshals shall routinely collect, and a court may tax as costs, fees for the following:
>
> (A) Serving a writ of possession, partition, execution, attachment in rem, or libel in admiralty, warrant, attachment, summons, complaints, or any other writ, order or process in any case or proceeding.
> (B) Serving a subpoena or summons for a witness or appraiser.
> (C) Forwarding any writ, order, or process to another judicial district for service.
> (D) The preparation of any notice of sale, proclamation in admiralty, or other public notice or bill of sale.
> (E) The keeping of attached property (including boats, vessels, or other property attached or libeled), actual expenses incurred, such as storage, moving, boat hire, or other special transportation, watchmen's or keepers' fees, insurance, and an hourly rate, including overtime, for each deputy marshal required for special services, such as guarding, inventorying, and moving.
> (F) Copies of writs or other papers furnished at the request of any party.
> (G) Necessary travel in serving or endeavoring to serve any process, writ, or order, except in the District of Columbia, with mileage to be computed from the place where service is returnable to the place of service or endeavor.

> (H) Overtime expenses incurred by deputy marshals in the course of serving or executing civil process.

28 U.S.C. § 1921(a)(1); *see also* M.D. Fla. Admiralty & Maritime R. 7.05(o)(2) ("If costs are awarded to any party, all reasonable expenses paid by the prevailing party incidental to or arising from the arrest or attachment of any vessel, property, and cargo must be taxed as costs."). Mr. Durning's declaration (Doc. 39-2) in addition to the Marshal's Report of Sale (Doc. 33) confirm the amount requested to cover the Marshal's fees, court's filing fee, and publication of the notice of action *in rem* and arrest of Vessel. *See Millennial Cap. Mgmt., LLC v. M/Y Cloud Ten*, No. 3:16-cv-693-J-34MCR, 2017 WL 3841845, at *6 (M.D. Fla. Aug. 1, 2017), *report and recommendation adopted sub nom. In Admiralty Millennial Cap. Mgmt., LLC v. M/Y Cloud Ten*, No. 3:16-cv-693-J-34MCR, 2017 WL 3840440 (M.D. Fla. Sept. 1, 2017) (including in the judgment, *inter alia*, the fee of $80.00 for publication of the notice of action *in rem* and arrest of the vessel); *Bank of Am., N.A. v. M/V Triple Threat*, Case No. 3:13-cv-592-J-39JBT (M.D. Fla. July 11, 2014) (amending the judgment to include $400 for the filing fee, $2,500 for the U.S. Marshal's fee for arrest of the vessel, and $70.25 for the publication of the notice of action *in rem* and arrest of the vessel).

Based on the foregoing, the undersigned recommends that the Clerk be directed to tax as costs $4,668.28 for the U.S. Marshal's fees, $402 for the filing fee, and $65.63 for the cost of publishing the Notice of Action In Rem. Additionally, Plaintiff is entitled to the requested amount of $35,708.71 for the *custodia legis*

expenses of the Vessel from November 5, 2021 to July 21, 2022 (the date of the Confirmation of Sale). As a result, the final judgment should be amended to $56,265.46. Moreover, Plaintiff is entitled to attorney's fees in the amount of $16,835.00. Therefore, the undersigned recommends that the clerk disburse to Plaintiff from the sale proceeds of the Vessel the final judgment amount of $56,265.46, plus 49% of the accrued interest, and the attorney's fees award of $16,835.00. Following payment to Plaintiff, approximately $42,000 will remain in the Court's Registry. The Court is anticipating that Defendant Bierman's estate will seek disbursement of the remaining funds as counsel for the estate has not objected to the foregoing disbursement (*see* Doc. 43-1; Doc. 47).

Accordingly, it is hereby

RECOMMENDED:

1. Plaintiff's Motion to Disburse Funds from the Court Registry to Satisfy the Default Judgement (Doc. 39) be GRANTED.

2. Plaintiff's Supplemental Motion for Attorney's Fees (Doc. 43) be GRANTED.

3. The Clerk be directed to disburse the following fund maintained in the Court's registry from the sale proceeds of the Vessel:

    a. 56,265.46, plus 49% of the accrued interest, in satisfaction of the final judgment; and

    b. $16,835.00 in satisfaction of the attorney's fees award.

IT IS REPORTED in Tampa, Florida, on this 28th day of October, 2022.

ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**

cc:   Hon. Kathryn Kimball Mizelle
      Counsel of Record